UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICE A. THOMAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:20 CV 363 DDN ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Patrice A. Thomas for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff was born on May 17, 1958, and she filed her application for benefits on April 17, 2017.[2] (Tr. 15.) She alleged a disability onset date of April 14, 2017. (*Id.*) She alleged she is disabled on account of injuries she sustained in an automobile accident, two broken hips, a lacerated liver, a punctured lung, spinal stenosis, degenerative disc disease, and neuropathy in the right leg. (Tr. 147.) Her initial application was denied by a disability examiner on October 4, 2017. (Tr. 15, 59.) On November 2, 2017, plaintiff appealed the decision and requested a hearing by an administrative law judge ("ALJ"). (Tr. 69-70.)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. *See* 42 U.S.C. § 405(g) (last sentence).

[2] Petitioner is insured through December 31, 2022. (Tr. 17.)

1

On February 28, 2019, plaintiff appeared before an ALJ, where she and a vocational expert testified.  (Tr. 29-49.)  On April 18, 2019, the ALJ denied petitioner's application.  (Tr. 12-14.)  On February 25, 2020, the Appeals Council considered additional evidence from plaintiff but denied her request for review.  (Tr. 1-3.)  The ALJ's decision is the final decision of the Commissioner now before this Court for review.  20 C.F.R. § 404.984(b)(2).

## MEDICAL HISTORY

Plaintiff's alleged disabling impairments stem from injuries she suffered in a December 2013 car accident.  (Tr. 233.)  She suffered pelvic, spinal, and hip fractures as well as laceration of her liver and a punctured lung.  (Tr. 223-26.)  She underwent surgery on both of her hips and retains hardware in both.  (Tr. 285-87, 760.)  Six months after the accident, plaintiff returned to her work as an administrative assistant with accommodations.  (Tr. 155.)  However, she has consistently suffered pain in her hips and legs since.  (Tr. 546, 554-628, 633-38, 645-50, 662-66, 673-74, 683-84, 698-700, 705-07, 711-12, 721-27, 749-52, 801-03.)

In April 2016, an MRI revealed that plaintiff suffered degenerative disc disease and spinal stenosis.  (Tr. 649-50.)  This led Susan Adams, M.D., plaintiff's treating physician, to refer her to a pain management specialist.  (*Id.*)  During the summer of 2016, plaintiff received multiple epidural injections into her L3 and L4 area as well as her right sacroiliac joint.  (Tr. 554-628, 789-800.)  Plaintiff has also consistently taken OxyContin for her pain.  (Tr. 646, 651-52, 655, 658, 661-63, 668, 672-74, 681, 688, 693, 696, 704, 718, 804-10, 815-22.)  She started with five milligrams but increased to ten milligrams in 2017.  (Tr. 689.)

On April 25, 2017, petitioner saw Dr. Adams again seeking relief for her back pain.  (Tr. 705-07.)  Dr. Adams noted that plaintiff "feels like her OxyContin isn't working any more, takes her pills in the morning, she is able to function but not without pain, watching the clock all day waiting to take her next dose."  (Tr. 705.)  Dr. Adams considered increasing plaintiff's prescription for OxyContin again or recommending surgery but decided to refer her for another round of pain management.[3]  (*Id.*)  During that same visit, Dr. Adams also noted that plaintiff resigned from her job two weeks prior due to her pain.  (*Id.*)  She also noted that plaintiff was nursing her husband, who suffered from kidney failure.  (Tr. 706.)

---

[3] There is no evidence in the record that petitioner underwent a second round of pain management.

2

On August 18, 2017, plaintiff was examined by the state agency's consultative physician, Arjun Bhattacharya, M.D. (Tr. 749-56.) Dr. Bhattacharya noted that plaintiff suffered degenerative disc disease and had lumbosacral discomfort but lacked physical signs of pain. (*Id.*) Specifically, there was no evidence of clubbing, cyanosis, jaundice, or atrophy, and she enjoyed a normal range of movement in her hands. (*Id.*) Dr. Bhattacharya opined that plaintiff could walk for a quarter of a mile, stand for ten to fifteen minutes, sit for an hour, and lift five to ten pounds. (*Id.*) However, he noted that plaintiff does not require a crutch or cane and is able to complete regular housework, write, hold a coffee cup, open a jar top, use a skillet and broom, and button her clothes. (*Id.*) X-rays taken on September 21, 2017 demonstrated that plaintiff suffered degenerative disc disease and joint space narrowing on her left hip. (Tr. 759-62.)

On December 18, 2017, Dr. Adams completed a medical source statement in support of plaintiff's DIB application. (Tr. 765-68.) In the diagnosis section of the form, Dr. Adams indicated that plaintiff suffered pelvic, knee, hip, sacral, rib, and lumbar fractures as well as chronic pain and depression. (*Id.* at 765.) Dr. Adams also indicated that plaintiff's pain was evidenced by her reduced range of motion, sensory disruption, complaints of pain, sleeplessness, and irritability. (*Id.* at 767.) Dr. Adams opined that plaintiff's pain precluded her from persisting or focusing on simple tasks and that she would be able to sit for two hours, stand for two hours, and walk for one hour or less during a normal eight-hour workday. (*Id.* at 765, 767.) However, plaintiff did not require a cane nor the flexibility to take a nap during the workday. (*Id.* at 768.) Dr. Adams also opined that plaintiff was only capable of occasionally lifting or carrying five pounds, reaching above her head, and stooping. (*Id.* at 766.) Dr. Adams further opined that plaintiff's impairments would require her to be absent from and be late to work twice a month and would require her to take more than three breaks per day. (*Id.* at 767.) Lastly, Dr. Adams opined that plaintiff's limitations would last twelve continuous months. (*Id.* at 768.)

On April 24, 2018, plaintiff reported an abnormal sensation in her leg that she described as akin to someone periodically "running a blow dryer across her" leg. (Tr. 811-12.) However, Dr. Adams did not discover any observable symptoms and noted that she had "[g]ood pedal and popliteal pulses, good sensation." (*Id.*)

## ALJ HEARING

On February 28, 2019, plaintiff appeared before an ALJ. (Tr. 28-49.) She testified about the nature and physical requirements of her prior work, accommodations that she received after her accident, and that intensifying pain led her to resign. (Tr. 34-38.) Plaintiff also testified as to her need to constantly change positions and modifications she has made to her life that enable her to complete housework and other everyday activities. (Tr. 39-43.) The vocational expert described plaintiff's past work as skilled sedentary work that she performed at a light exertion level. (Tr. 44.) She also responded to a series of hypothetical questions posed by the ALJ and plaintiff's attorney. (Tr. 45-48.) Notably, the vocational expert opined that a hypothetical individual restricted to a sedentary exertion level and who needed to stand for five minutes every thirty minutes would be able to perform plaintiff's past relevant work as long as she is on task. (Tr. 44-45.) However, if the same hypothetical individual is unable to stay on task, she would neither be able to perform plaintiff's past work nor any other work in the national economy. (Tr. 45-46.)

## DECISION OF THE ALJ

On April 18, 2019, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 12-21.) At Step One, the ALJ found that plaintiff had not engaged in gainful activity since April 14, 2017. (Tr. 17.) At Step Two, the ALJ found that plaintiff had severe impairments of degenerative disc disease, status post lumbar transverse process fractures, and a status post acetabular fracture. (*Id.*) The ALJ also found that she had been treated for hypertension and hyperlipidemia and that these conditions only minimally limited her ability to work. (Tr. 17-18.) Lastly, the ALJ found that there was insufficient medical evidence to support a finding of peripheral neuropathy or depression. (*Id.*)

At Step Three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404. (*Id.*) The ALJ also found that plaintiff retained a residual functional capacity to perform sedentary work. (Tr. 18-20.) Specifically, the ALJ found that plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. (Tr. 18.) However, plaintiff cannot climb ladders, ropes, or scaffolds. (*Id.*) Plaintiff can tolerate less than occasional exposure to extreme temperature or vibration but cannot be exposed to unprotected heights or hazardous machinery. (*Id.*) Lastly, the ALJ found that plaintiff can sit for thirty-minute periods while remaining on task with five-minute standing breaks in between. (*Id.*)

At Step Four, the ALJ found that plaintiff could perform her past relevant work as an administrative assistant. (Tr. 20.) Consequently, plaintiff was not "disabled" as defined in the Social Security Act. (Tr. 21.)

## **GENERAL LEGAL PRINCIPLES**

When reviewing the decision of the Commissioner, the Court's role is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the administrative final decision is supported by substantial evidence, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). However, "the substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotations omitted).

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work. *Id.* at §

404.1520(a)(4)(iv). Claimant bears the burden of demonstrating that she is no longer able to return to her past relevant work. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines that the claimant cannot return to her past relevant work, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## **DISCUSSION**

On appeal, plaintiff claims that the ALJ erred in how she evaluated plaintiff's pain and its limiting effects when making her RFC decision at Step 4. Petitioner first argues that the ALJ failed to sufficiently consider evidence of her pain and articulate her reasoning according to precedent and 20 C.F.R. § 404.1567. Had the ALJ adhered to the correct process, plaintiff argues that the ALJ would have found that she was unable to focus, concentrate, and persist. Plaintiff also argues that the ALJ failed to articulate why she discredited Dr. Adams's opinion about her functional limitations. Lastly, plaintiff argues that the ALJ failed to consider the effect of legal prohibitions on controlled substances in her ability to perform her past relevant work. Each of plaintiff's claims of error are meritless.

### **ALJ's Process for Evaluating Plaintiff's Pain**

Plaintiff's primary argument is that the ALJ made a procedural error while considering the impact of her pain on her RFC. (Doc. 12, at 7-11.) Specifically, she argues that the ALJ failed to sufficiently consider evidence of plaintiff's pain and discuss how the ALJ used that evidence when making her RFC decision. (*Id.*)

When evaluating a subjective symptom, like pain, ALJs must follow a two-step process. *See* SSR 16-3p, 2016 WL 1119029, at *3-4, (Mar. 16, 2016). First, they must consider whether there is some objective medical evidence that demonstrates the existence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See id.*; 20 C.F.R. § 404.1529(b). Objective medical evidence is defined as signs observed using clinical diagnostic techniques or laboratory findings observed using laboratory diagnostic techniques. *See* SSR 16-3p, 2016 WL 1119029, at *3. Sometimes the objective medical evidence will clearly establish the existence of the impairment and the ALJ will not need to move to the second step. *Id.* at *3. If there is some objective medical evidence but not enough to establish the

limiting effects of the claimant's symptom outright, the ALJ moves to the second step. *Id.* at *4. If there is no objective medical evidence of a medically determinable impairment that could produce the claimant's symptoms, the ALJ will stop without considering the symptom in her RFC finding. *Id.*

At Step Two of regulatory analysis, the ALJ must evaluate whether the claimant's subjective statements about the intensity, persistence, and limiting effects of the claimant's symptom is consistent with the objective medical evidence, physicians' opinions, and evidence in the record. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029 at *4. Other evidence includes: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the symptom; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptom; 5) other treatment the complainant receives for his or her symptoms; 6) measures the claimant has taken to relieve the pain; and 7) functional limitations and restrictions.[4] *See* 20 C.F.R. § 404.1529(c). *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), *vacated* 476 U.S. 1167 (1986), *adhered to on remand*, 804 F.2d 456 (8th Cir. 1986). The ALJ must consider each factor but need not methodically discuss each. *See Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011). However, an ALJ cannot discredit a claimant's statements about the degree of her symptoms solely because they are not fully substantiated by objective medical evidence. 20 C.F.R. § 404.1529(c)(2); *Polaski*, 739 F.2d at 1322.

Here, the ALJ did not articulate her findings on a symptom-by-symptom basis, but her opinion contains sufficient information to support her findings. At the first step, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]" (Tr. 19.) The ALJ did not elaborate on which of petitioner's alleged symptoms were supported by the objective medical evidence and which were not. (*Id.*) However, the ALJ's RFC finding specified an allowance for plaintiff to stand for five minutes for every thirty-minute period of sitting. (Tr. 18.) This indicates that some objective medical evidence supported plaintiff's alleged pain because the only evidence associated with her need to shift positions relates to her pain. (*See, e.g.*, Tr. 38-39.) Substantial evidence supports this finding.

---

[4] In 2016, the SSA shifted the focus of the inquiry from the evaluation of the claimant's credibility to the consistency of the evidence of the symptom, but this change is irrelevant to an analysis of the *Polaski* factors. *Compare* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) *to* SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See also Noerper v. Saul*, 964 F.3d 738, 745 n.3 (8th Cir. 2020) (SSR 16-3p "changes terminology rather than the substantive analysis to be applied").

Plaintiff's impairments—her broken hips and degenerative disc disease—could reasonably be expected to produce pain in her lower back and upper leg.

At the second step, the ALJ found that "the [plaintiff's] statements concerning the intensity, persistence or limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 19.) At this step, plaintiff argues that the ALJ erred by failing to explain how she evaluated the evidence of her pain according to the *Polaski* factors. (Doc. 12, at 7-11.) Contrary to plaintiff's argument, the ALJ complied with *Polaski* and 20 C.F.R. § 404.1529.

In her written opinion, the ALJ first discussed the objective medical evidence from the state medical examiner's clinical findings and the follow-up x-rays. (Tr. 19-20, 828-33.) The ALJ then discussed the notes of plaintiff's treating physician, her ongoing use of OxyContin, her ability to walk without a crutch or walker, and her ability to perform housework. (Tr. 20.)

Plaintiff argues that the ALJ erred by not discussing the impact of her medication in greater detail and in failing to discuss how the ALJ weighed the evidence related to the other *Polaski* factors. (Doc. 12, at 9-10.) However, ALJs need not expressly discuss each *Polaski* factor. *See Partee*, 638 F.3d at 865. When the Social Security Administration requires ALJs to express their thought process, it says so. *Compare* 20 C.F.R. § 404.1520c (requiring ALJs to "consider" certain factors when weighing medical opinions and to "articulate" a subset of those factors) *to* 20 C.F.R. § 404.1529 (only requiring ALJs to "consider" certain factors while evaluating symptoms).

Here, the ALJ expressly discussed plaintiff's daily activities, the location of her pain, and her medicine. (Tr. 19-20.) The Court is satisfied that the ALJ sufficiently considered objective medical evidence and other evidence of plaintiff's pain, as required by *Polaski* and 20 C.F.R. § 404.1529. Petitioner's first argument is without merit.

**Focus, Concentration, and Persistence**

Plaintiff also argues that the ALJ erred in how she analyzed the limiting effects of her pain. Specifically, plaintiff argues the ALJ's finding that she can stay on task for thirty-minute periods lacks substantial evidentiary support because her pain renders her unable to focus, concentrate, and persist at work. (Doc. 12, at 2-3, 9-10; Tr. 18.)

Plaintiff did not list her inability to concentrate in her original application for benefits and stated "no" when asked about whether she suffered any mental condition. (Tr. 146-55.) However,

8

on her disability report plaintiff stated that her conditions rendered her unable to concentrate and that she had difficulty paying attention. (Tr. 160, 164.) She also stated that she "cannot focus" and that she "constantly watch[es] the clock for when [she] can take [her] next medicine" in her function report. (Tr. 159.) This complaint is repeated in Dr. Adam's contemporaneous treatment record and in plaintiff's testimony during the hearing with the ALJ. (Tr. 38, 705.) Plaintiff also testified that as her pain medicine gradually stopped working, she lost the ability to concentrate at work and only watches television shows that she does not need to pay attention to. (Tr. 38, 42.)

In her medical source statement, Dr. Adams opined that plaintiff would need to take more than three breaks during an eight-hour workday due, in part, to petitioner's inability to concentrate. (Tr. 768.) However. Dr. Adams consistently noted normal psychiatric signs on her physical exams and the only psychiatric symptom she discussed was plaintiff's depression. (Tr. 645-46, 663-64, 674-75, 681-82, 699-700, 706-07, 712, 802-03, 812-13.) Indeed, the only line in Dr. Adams's notes that approaches a discussion of concentration is a repetition of plaintiff's subjective claim that she watches the clock all day waiting for her next dose. (Tr. 705.) Dr. Adams did not document or treat this symptom or refer plaintiff to a mental health professional. (Tr. 705-07.)

Plaintiff's claim that she is unable to stay on task for thirty-minute periods is also unsupported by the rest of the record. Plaintiff did not have any issues concentrating during her initial interview by the field office. (Tr. 157.) Similarly, Dr. Bhattacharya's examination of her is silent about her concentration throughout his forty-minute exam. (Tr. 749-52.)

Before a symptom can be considered limiting, it must have *some* support by objective medical evidence.[5] *See* 20 C.F.R. § 404.1529(b). After an exhaustive review of the record, the only evidence this Court found supporting plaintiff's claimed inability to focus, concentrate, and persist are her subjective statements which did not persuade the ALJ.

**Medical Opinion**

Plaintiff next argues that the ALJ erred by addressing only a portion of Dr. Adams's medical opinions. (Doc. 12, at 11.) Specifically, plaintiff argues that the ALJ failed to either adopt

---

[5] "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b).

Dr. Adams's opinion that plaintiff's pain rendered her unable to concentrate or to expressly discredit the opinion.  (*Id.* at 11-12.)  Contrary to plaintiff's argument, ALJs are not required to address each medical opinion of a specific source.  *See* 20 C.F.R. § 404.1520c(b)(1).  Petitioner also takes issue with the lack of specificity in the ALJ's reasoning for discrediting Dr. Adams's medical opinion.  (Doc. 12, at 11-12.)

Claims filed after March 27, 2017 are analyzed under 20 C.F.R. § 404.1520c.  The new regulation eliminated the treating physician rule and relaxed the requirement that ALJs provide "good reasons" for the weight given to medical opinions.  *Compare* 20 C.F.R. § 404.1527 (old rule) *to* 20 C.F.R. § 404.1520c (new rule).  Under the new rule, the Commissioner "will not defer or give any specific weight, to any medical opinion(s), including those from [petitioner's] medical sources." 20 C.F.R. § 404.1520c(a).  Instead, ALJs must determine the persuasiveness of each medical source or prior administrative medical finding based on supportability, consistency, relationship with the claimant, specialization, and any other factors that "tend to support or contradict a medical opinion."  20 C.F.R. § 404.1520(a), (c).  Supportability and consistency are the most important factors and, therefore, ALJs must articulate their reasoning.  *See* 20 C.F.R. § 404.1520c(b)(2).  The ALJ was not required to explain her reasoning for the remaining factors unless weighing equally persuasive medical opinions.  20 C.F.R. § 404.1520c(b)(2)-(3).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); *see also Dornbach v. Saul*, 2021 WL 1123573, at *3-4 (E.D. Mo. Mar. 24, 2021).

Here, the ALJ found Dr. Adams's opinion that plaintiff had a reduced sedentary residual functional capacity was unpersuasive because it was "far too restrictive" and unsupported by her treatment records.  (Tr. 20.)  The ALJ's conclusion that the opinion was too restrictive compared to other evidence in the record is consistent with the "consistency" definition in 20 C.F.R. § 404.1520(c)(1).

The ALJ largely relied on Dr. Adams's findings on plaintiff's limitations. (*See* Tr. 18, 766-67.) However, the ALJ rejected Dr. Adams's opinion that plaintiff was limited to lifting five pounds and reaching overhead only occasionally and that plaintiff was unable to concentrate. (Tr. 18, 766-67.) As discussed more fully above, Dr. Adams's opinion lacks evidence to support her finding that plaintiff could not concentrate. Her treatment records are similarly silent about plaintiff's capacity to lift or raise her hand over her head. (*See* Tr. 630-739.) These latter opinions were inconsistent with plaintiff's ability to do regular housework and Dr. Bhattacharya's clinical examination, which found that plaintiff enjoyed a full range of movement of her hands. (Tr. 19-20, 751.) Because Dr. Adams's opinion about plaintiff's functional limitations was neither supported by the record nor consistent, the ALJ's finding that they are unpersuasive is supported by substantial evidence.

In coming to this conclusion, the Court finds it necessary to distinguish this case from recent precedent. In *Lucus v. Saul*, an ALJ discredited the opinion of the DIB applicant's treating physician with a blanket statement that the opinion was "internally inconsistent and contradicted by the record and her own treatment notes." 960 F.3d 1066, 1067 (8th Cir. 2020).[6] The ALJ did not provide examples from the record nor state with any specificity why she found the record inconsistent. *Id.* at 1069.

The Eighth Circuit found the ALJ's explanation inadequate and reversed. *Id.* On its review the court found no inconsistency between the physician's opinion and the treating notes discussed by the ALJ. *Id.* On its own, the ALJ's boilerplate statement discrediting the opinion was inadequate. *Id.* The *Lucus* court then held that the ALJ's failure to adequately explain her reasoning according to the social security regulations constituted non-harmless legal error subject to reversal. *Id.* at 1069-70.

As in *Lucus*, the ALJ here provided a boilerplate conclusion that Dr. Adams's opinion about plaintiff's functional limitations was unpersuasive. (Tr. 20.) However, unlike *Lucus*, the

---

[6] *Lucus* was a case under the old regulations, which required ALJs to provide "good reasons" when they declined to give a controlling physician's opinion. 960 F.3d at 1068. While the Eighth Circuit has not had the occasion to interpret the articulation requirements under the new rule, the district courts that have considered the issue have applied *Lucas* and similar precedent. *See Dornbach v. Saul*, 2021 WL 1123573, at *7, (E.D. Mo. 2021) (applying *Lucus*); *Phillips v. Saul*, 2020 WL 3451519, at *2-3 (E.D. Ark. 2020) (applying *Lucus*); *Bonneau v. Saul*, 2021 WL 920981, at *6 (E.D. Ark. 2021) (applying *Walker v. Comm'r*, 911 F.3d 550 (8th Cir. 2018)).

11

ALJ discussed evidence earlier in the opinion—Dr. Bhattacharya's clinical findings and plaintiff's ability to complete daily activities—that supported her reasoning that Dr. Adams's opinion was "far too restrictive." (Tr. 19-20.) The ALJ's finding that Dr. Adams's RFC opinion was unsupported by her own treatment notes was also adequate, even though she did not further elaborate or provide examples. Unlike the inconsistency finding in *Lucus*, a finding that the opinion is unsupported speaks to the absence of evidence. By noting this absence, the ALJ provided subsequent reviewers a simple task: scour Dr. Adams's notes to see if there is *any* evidence supporting her conclusions. Evidence did not exist to support Dr. Adams's opinion, thus the ALJ's rationale and her conclusion that the opinion was unpersuasive and lacking in substantial support is adequate. Accordingly, the ALJ did not require the Court to "fill in the gaps" of her thinking. *See Lucus*, 960 F3d at 1069.

For the reasons stated above, the ALJ's finding that Dr. Adams's RFC opinion was unpersuasive is adequately articulated and is supported by substantial evidence

### Ability To Do Past Related Work

Lastly, plaintiff argues that the ALJ erred by failing to consider the impact of controlled substance prohibitions on her ability to do her past relevant work. (Doc. 12, at 3, 10.) Specifically, plaintiff argues that the ALJ should have recognized that her previous employer contracts with the federal government and is, consequently, required to maintain a drug free workplace. (*Id.*) *See also* Drug-Free Workplace Act of 1988, 41 U.S.C. § 8101, *et seq.* Plaintiff claims that due to drug-free workplace policies, she would be unable to possess and take her OxyContin at work. (Doc. 12, at 10.) Without her medication, plaintiff would be in extreme pain and her inability to concentrate amplified. (*Id.*)

As an initial matter, the Court notes that the Drug-Free Workplace Act only prohibits individuals from engaging in *unlawful* possession or use of controlled substances. *See* 41 U.S.C. § 8102(a)(2). Plaintiff's use of OxyContin pursuant to Dr. Adams's prescription removes her from the scope of the federal prohibition. However, plaintiff points to her former employer's drug-free policy, which goes further by prohibiting possession and usage of legal drugs that may cause impairment at work. (Doc. 12, at 10.) Yet, plaintiff cites no authority that suggests this policy, or any other drug-free workplace policy, is impervious to federal and state accommodations laws. *See e.g.*, U.S. Equal Emp. Opp. Comm'n, *Use of Codeine, Oxycodone, and Other Opioids:*

*Information for Employees*, EEOC-NTVA-2020-2 (Aug 5, 2020). Indeed, plaintiff's former employer demonstrated a general willingness to accommodate her conditions. (*See* Tr. 36-47.)

Regardless, plaintiff failed to raise this argument or present evidence supporting it at any point during the administrative proceedings below. (*See* Tr. 29-60, 146-79, 221-22.) The ALJ is not required to "investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). Plaintiff's argument is without merit.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 12, 2021.